United States District Court
Southern District of Texas
**ENTERED**
December 21, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Tiecia Ayers, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-1844 |
| | § | |
| Bergquist Law Firm, PLLC, | § | |
| and David W. Bergquist, | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

Pending before the court in this employment dispute are Defendants Bergquist Law Firm, PLLC, (BLF) and David W. Bergquist's motion for summary judgment, ECF No. 29; Defendants' motion to strike Plaintiff's expert on human resources practices, ECF No. 30; Defendants' objections to Plaintiff's summary judgment evidence, ECF No. 41; and Plaintiff's motion to strike Defendants' objections to the evidence, ECF No. 42.

The parties consented to the jurisdiction of the magistrate judge, and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. ECF Nos. 14–15. As discussed below, Defendants' motion for summary judgment is granted in part and denied in part.

Neither party relies on the opinions of Plaintiff's human resources expert in support of their summary-judgment arguments, and the expert's opinions have no

apparent bearing on the issues presented. The court can rely solely on legal authority, rather than expert opinion, in deciding whether Ayers has presented sufficient evidence in support of her claims. The court therefore denies the motion at this time without prejudice to refiling it at the time of trial. Defendants' objections to Plaintiff's summary judgment evidence are overruled as discussed below. And, finally, because the court has considered Defendants' objections, Plaintiff's motion to strike Defendants' objections is denied as moot.

## 1. Procedural and Factual Background

Ayers filed this case on June 8, 2021. ECF No. 1. She alleged gender, race, and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, (Title VII) 42 U.S.C. §§ 2000e–2000e-17; the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code §§ 21.051–21.061; and 42 U.S.C. § 1981 against BLF. ECF No. 1 at 4–5. Ayers also alleged retaliation and interference under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, against BLF and Bergquist and disability discrimination and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, against BLF. ECF No. 1 at 5–6.

Defendants filed a motion for summary judgment in June 2022. ECF No. 29. Defendant also filed a motion to strike Plaintiff's expert and filed objections to Plaintiff's summary judgment evidence. ECF Nos. 30, 41. Plaintiff moved to strike

Defendants' objections. ECF No. 42. All motions are fully briefed. *See* ECF Nos. 31, 33, 37, 40, 43. In her response to the summary judgment motion, Plaintiff dropped her race-based discrimination claim. ECF No. 33 at 45.

BLF employed Ayers in March 2018 as an attorney. ECF No. 29-2; Ayers's Decl. ¶ 2, ECF No. 33-1. BLF terminated Ayers's employment on February 6, 2020. ECF No. 29-49; Ayers's Decl. ¶ 26. Here is Ayers's account of the events leading up to the termination of her employment:

- In 2018, BLF assigned Ayers a paralegal, Nicole Garcia. Ayers's Decl. ¶ 6. In August 2019, Ayers became Keyarria Amey's supervising attorney. *Id.* About the same time, Jovani Diaz became Ayers's supervising attorney. *Id.* ¶ 5. Ayers carried a caseload of approximately 100 cases. *Id.* ¶ 8.

- In the summer of 2019, Ayers found out that she was pregnant. Ayers's Decl. ¶ 12. Ayers reported her pregnancy to Bergquist and Diaz "right around September 2019." *Id.* ¶ 12. They did not discuss maternity leave, and Ayers did not know that maternity leave was an option. *Id.* No one mentioned the FMLA to Ayers, who "was not aware of this law or that it would apply to BLF." *Id.* ¶ 13. Ayers learned about FMLA leave from her doctor in January 2020 when the doctor advised Ayers to go on bedrest or take maternity leave. *Id.*

- Ayers asked Diaz, who was pregnant about the same time as Ayers, what her plan was for after her baby was born, and Diaz responded that she did not know. Ayers's Decl. ¶¶ 5, 14. Ayers later learned that Diaz was not taking any leave but would be working from home. *Id.*

- On December 31, 2019, Ayers's doctor first prescribed bedrest. Ayers's Decl. ¶ 18. The doctor ran tests to determine the risk level of her pregnancy and whether Ayers would need to be on bedrest for the remainder of the pregnancy. *Id.* Ayers texted Bergquist the information, and he responded that she needed to develop a plan with Diaz. *Id.* Ayers consulted Diaz, and the two decided that, while on

bedrest, Ayers would receive phone calls from home and would monitor the work of Amey and Garcia. *Id.* Ayers informed Bergquist of the plan. *Id.* ¶ 19. Bergquist did not offer Ayers maternity leave or provide instructions if the bedrest was extended, even though he told her that he thought the doctor would not take her off bedrest. *Id.* Ayers did return to work on Monday, January 6, 2020. ¶ 19.

- On January 21, 2020, Ayers began to feel sick while at work. Ayers's Decl. ¶ 20. Amey drove Ayers to the hospital. *Id.* Ayers took the following two days off but worked from home. *Id.* Because it was early in the year, she had not accrued much leave and, by taking those two days off, she exhausted her accrued personal time (PTO). *Id.* She returned to her doctor on the morning of January 24, 2020. *Id.* Her doctor prescribed medication and bedrest for the remainder of Ayers's pregnancy. *Id.*

- On January 27, 2020, Ayers went into the office and met with Aimee Mendez, office manager, Josh Daws, Ayers's interim supervising attorney, and Bergquist. Ayers's Decl. ¶ 21. Ayers asked to work from home. *Id.* Bergquist told her that she should "take care" and that the firm would "support" her. *Id.* He told her to send in the doctor's note but did not offer Ayers any type of leave. *Id.* Bergquist did not instruct Ayers to develop a game plan and did not inquire about tasks that he previously assigned Ayers that she admittedly had not completed. *Id.*

- Ayers arranged for her work calls to be transferred to her cell phone while she was out of the office and for her mail and faxes to be forwarded to her. Ayers's Decl. ¶ 21.

- On January 28, 2020, Bergquist informed Ayers that she "could not work from home and . . . was not permitted to use any PTO since [she] already had used [her] accrued PTO that year on bedrest[.]" Ayers's Decl. ¶ 23. Bergquist also informed Ayers she would not be paid while out of the office. *Id.* ¶ 25. According to Ayers, she believed that she "had been put on leave." *Id.* ¶ 23.

- On January 30, 2020, Ayers stopped checking her email and did not know that Bergquist had continued to send her emails asking questions. Ayers's Decl. ¶ 23. She continued to answer calls from Amey and Garcia about her cases. *Id.*

4

- Up to that point, Ayers had "never received a formal disciplinary write-up, performance improvement plan, or anything labeled as a counseling or warning." Ayers's Decl. ¶ 6. Diaz identified no errors during a January 2020 audit of Ayers's cases. *Id.*

- Ayers gave birth on January 31, 2020. Ayers's Decl. ¶ 24. She spent the next several days focused on her baby, during which time, she was not checking her email. *Id.* ¶¶ 25–26.

- When Ayers checked her email on February 6, 2020, she received the email notifying her that her employment had been terminated. Ayers's Decl. ¶ 26.

- Ayers applied for unemployment benefits. Ayers's Decl. ¶ 27.  BLF filed a response to her application stating that Ayers failed to submit "a proper request for time off along with a plan of action for her job responsibilities" and failed to "work an average of 55 hours a week as required, maintain accurate timesheets, respond to client phone calls and emails, and follow the firm's audit procedure." ECF No. 33-2.

## 2. Summary Judgment Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.

2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Nor

is the "mere existence of a scintilla of evidence" sufficient; "there must be

evidence on which the jury could reasonably find for the plaintiff." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Defendants' Objections to the Evidence

On summary judgment, a party may object to exhibits that "cannot be

presented in a form that would be admissible in evidence." Fed. R. Civ.

P. 56(c)(2). Declarations are competent summary judgment evidence if they are

"made on personal knowledge, set out facts that would be admissible in evidence,

and show that the . . . declarant is competent to testify on the matters stated." Fed.

R. Civ. P. 56(c)(4).

Defendants object to Plaintiff's submitting the Texas Workforce

Commission (TWC) hearing packets and audio recordings as evidence, arguing

that Plaintiff fails in her response to the motion for summary judgment to point out

the specific portions of the TWC materials on which she relies. ECF No. 41 at 6–7

(citing ECF Nos. 33-11, 33-12, 33-13). Plaintiff argues in her motion to strike

Defendants' objections that she did cite the pertinent parts of these exhibits. ECF

No. 42 at 1 n.1. As stated above, the court is required to consider only the cited

evidence and has no duty to scour the evidence in search of fact issues. Fed. R.

Civ. P. 56(c)(3); *RSR Corp.*, 612 F.3d at 857. However, the court also has the

discretion to consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Defendants' objection is overruled.

Defendants also offer the following one-sentence objection to the TWC audio transcripts: "Defendants object to Plaintiff's unofficial TWC audio transcripts to the extent that they are not admissible but at best are demonstrative." ECF No. 41 at 7 (citing ECF No. 33-11). In resolving the summary judgment motion, the court has not considered the testimony from the TWC hearings. Even if the court had found the testimony necessary to resolve the pending summary judgment motion, the court can consider that evidence if it could be presented in an admissible form at trial. *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). It appears that the TWC hearing testimony can be presented in a form that would be admissible in evidence, for example, by calling the TWC witnesses to the stand in this trial. Defendants' objection is overruled.

Defendants offer an omnibus set of objections to statements in Plaintiff's declaration, ECF No. 33-1, and in the declarations of former BLF employees Keyarria Amey, ECF No. 33-3, Alexandria Nicole Garcia, ECF No. 33-5, and Catherny Ramirez, ECF No. 33-6. In total, Defendants raise objections based on

relevance, character evidence, personal knowledge, hearsay, and best evidence under the Federal Rules of Evidence 401, 404, 602, 802, and 1002 and raise objections that the statements are conclusory or present new allegations. *See* ECF Nos. 41-1–41-4. While Defendants' objections identify the portions of the declarations and the evidentiary rules upon which they rely, they do not fully explain the legal reasoning. The court nevertheless has considered every objection.

The court relied on portions of Ayers's declaration for factual background and as evidence. The evidence upon which the court relied appears to be capable of being presented at trial in admissible form. For example, a speaker of the objected-to hearsay statements could be called as a witness. The court thus overrules Defendants' objections to the statements in Ayers's declaration on which the court relies. The court finds that the remainder of Ayers's declaration and the entirety of the other three declarations do not contain any evidence pertinent to resolving the issues presented on summary judgment. Defendants' objections are overruled.

### 4. Analysis

Defendant seeks summary judgment on Plaintiff's claims of gender and pregnancy discrimination under Title VII and the TCHRA;[1] interference and retaliation under the FMLA; and disability discrimination and failure to accommodate under the ADA.

---

[1] Because Ayers withdrew her race-based discrimination claim, the court does not address Section 1981.

Before addressing the individual claims, the court addresses Ayers's declaratory and other evidence suggesting that BLF was a demanding employer and that Bergquist was "a very difficult and intimidating boss." Ayers's Decl. ¶¶ 4, 9. The court notes that none of the statutes under which Ayers filed this case are intended to protect employees from erroneous or arbitrary employment decisions or difficult places to work. These statutes are only intended to protect employees from employment decisions that are *motivated by discrimination*. *See Kraft v. Univ. of Tex. Med. Branch*, 775 F. App'x 159, 161 (5th Cir. 2019) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones.")); *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)) ("[T]he court does not 'engage in second-guessing of an employer's business decisions.'").

## A. Discrimination Based on Gender and Pregnancy

Title VII and the TCHRA make it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also* Tex. Lab. Code § 21.001(1) (stating

that the TCHRA's purpose is to provide "for the execution of the policies of Title VII"); Tex. Lab. Code § 21.051 (stating that it is unlawful for an employer to discriminate based on gender among other protected traits).

Since the enactment of the Pregnancy Discrimination Act (PDA), discrimination under Title VII "on the basis of sex includes discrimination 'on the basis of pregnancy, childbirth, or related medical conditions.'" *Appel v. Inspire Pharms., Inc.*, 428 F. App'x 279, 281 (5th Cir. 2011) (quoting 42 U.S.C. § 2000e(k)); *see also Carmona v. DeJoy*, No. 22-20064, 2022 WL 16836978, at *1 (5th Cir. Nov. 9, 2022) (quoting 42 U.S.C. § 2000e(k)) (stating that the PDA requires that pregnant women "be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work"). Ayers offers no argument and produces no evidence to support any gender-based discrimination claim apart from her pregnancy-discrimination claim.

When based on circumstantial evidence, as here, these claims are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (applying the burden-shifting approach to a TCHRA discrimination claim); *Carmona*, 2022 WL 16836978, at *1 (applying the burden-shifting approach to a Title VII pregnancy-discrimination claim). The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie

11

case of gender/pregnancy discrimination, which requires Ayers to produce evidence showing that she: (1) was a member of a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Carmona*, 2022 WL 16836978, at *1 (quoting *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016)).

The defendant must respond by "articulat[ing] a legitimate, non-discriminatory reason for the adverse employment action[,]" and, if the defendant does so, "the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for . . . discrimination." *Morris*, 827 F.3d at 400 (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

As to the prima facie case, it is undisputed that Ayers was pregnant, was qualified under Title VII for her position, and was terminated. BLF argues only that Ayers cannot produce any evidence demonstrating that she was treated less favorably than similarly situated employees who were not pregnant. ECF No. 29 at 22–24. Ayers argues that she was treated less favorably than her supervising attorney, Diaz. ECF No. 33 at 26; *see also* ECF No. 1 at 3.

Specifically, Ayers argues:

> The evidence shows that Diaz, who never took days off or had a troubled pregnancy, was not berated and fired. Diaz is a proper comparator[] because she held the same job responsibilities as Ayers, supervised other attorneys and paralegals as Ayers did, and was ultimately supervised by Bergquist, as Ayers was.

ECF No. 33 at 26 (citing ECF No. 33-8 at 35:25–36:11 (explaining that "managing lawyers or senior lawyers. . . . have people that work under them")). Alternatively, Ayers argues that other firm attorneys who mishandled their cases were not terminated from their positions and that Ayers's duties were reassigned to Amey and other "attorneys who were not pregnant or suffering from pregnancy-related disabilities." ECF No. 33 at 19 (citing ECF No. 33-3 ¶ 7).

To establish disparate treatment, Ayers must produce evidence showing that BLF treated her "more harshly than 'similarly situated' employees for 'nearly identical' actions." *Vincent v. Coll. of the Mainland*, 703 F. App'x 233, 238 (5th Cir. 2017). In other words, Ayers must identify at least one coworker *outside* of Ayers's protected class who held the same job or job responsibilities, shared the same supervisor, or had her employment status determined by the same person. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (2017). The coworker identified as a comparator must have a history of similar violations or infringements to Ayers. *See id.*

In her complaint, Ayers identified Diaz as the only comparator under Title VII. *See* ECF No. 1 ¶¶ 1, 16. In her declaration, Ayers admits that, while Diaz and Ayers shared some duties, Diaz was Ayers's direct supervisor. *See* Ayers's Decl. ¶ 5. For this reason alone, Diaz and Ayers were not similarly situated. *See Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008) ("Such distinction in position and supervision has been held sufficient to establish that two persons are not similarly situated.").

Other differences in Ayers's and Diaz's work situations include that Diaz had more supervisory experience, more years of practice, and more trial experience. *See* ECF No. 29 at 24 (citing Bergquist's Decl. ¶ 11, ECF No. 20-12.) Ayers also admits that Diaz was not *outside* of Ayers's protected class—pregnant women—and that, unlike Ayers, Diaz was not prescribed bedrest during pregnancy and did not miss days of work while pregnant. *See* ECF No. 33 at 26 ("The evidence shows that Diaz, who never took days off or had a troubled pregnancy, was not berated and fired."); Ayers's Decl. ¶¶ 18–21 (discussing the days off she took due to troubles related to her pregnancy). The evidence shows that, in late January 2020, Ayers had used all the leave she had accrued. *See* Ayers's Decl. ¶¶ 20, 23.

Moreover, Ayers and Diaz were not in nearly identical circumstances. Ayers points to no evidence that Diaz had similar performance issues alleged against

Ayers. No evidence indicates that Diaz missed any workdays during her pregnancy or that nonpregnant employees similarly missed work. "The PDA does not protect pregnant employees who are absent from work 'due to pregnancy or to complications of pregnancy,' unless absences of non-pregnant employees are comparably overlooked." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (2003) (quoting *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002); *see also Tomiwa v. PharMEDium Servs., LLC*, Civil Action No. 4:16-CV-3229, 2018 WL 1898458, at *4 (S.D. Tex. Apr. 20, 2018) (quoting Stout, 282 F.3d at 850) (same). Ayers fails to show that Diaz is a proper comparator under the law.

In one sentence of her response to summary judgment, Ayers also argues that she has presented evidence that other BLF attorneys who mishandled their dockets were not disciplined. ECF No. 33 at 26. Ayers did not make this allegation in her complaint. Ayers cites Amey's declaration stating that BLF had a high turnover rate, that it was "very common" for cases to be reassigned after attorneys quit, and that those cases were often in "very bad shape." ECF No. 33-3 ¶ 3. This testimony provides no evidence that informs the court's determination whether nonpregnant attorneys were treated more favorably than Ayers.

In her declaration, Ayers offered anecdotal accounts of attorneys whom she believes mishandled or neglected cases. *See* Ayers's Decl. ¶ 33. She stated that she "inherited cases from other lawyers who quit" that "were very neglected." *Id.* In

15

one example, Ayers said she was assigned a case in which the prior BLF attorney had allowed the client to seek treatment totaling more than what was covered by insurance. *Id.* Ayers said that, in four or five cases that she "inherited" when lawyers left the firm, discovery deadlines had been missed and motions to compel remained pending. *Id.* In another case, a female attorney had not completed any of the assigned pretrial tasks. *Id.* Ayers asserted that none of these attorneys were disciplined. *Id.* Assuming Ayers had personal knowledge that no disciplinary action had been taken, Ayers fails to identify any of these attorneys and provides insufficient factual detail for the court to determine whether any were a proper comparator under Title VII. *See Santos v. Wincor Nixdorf, Inc.*, 1:16-CV-440-RP, 2018 WL 1463710, at *8 (W.D. Tex. Mar. 23, 2018) (finding that, in the absence of evidence identifying the alleged comparators by name, title, or responsibilities or by providing other information, the court could not determine whether any was similarly situated to the plaintiff). Ayers has not established the existence of a proper comparator.

Although Ayers's complaint alleges only that she was treated less favorably than others similarly situated, Ayers adds the argument in her response that she was replaced by someone outside her protected class, arguing that her work was "delegated to attorneys who were not pregnant or suffering from pregnancy-related disabilities." ECF No. 33 at 26 (citing *Hernandez v. Clearwater Transp., Ltd.*,

550 F. Supp. 3d 405, 416–17 (2021)); *see also* ECF No. 1 ¶ 24. In *Hernandez*, the court found that the plaintiff met her prima facie burden because, although she was told that her job was eliminated, all her duties were delegated to two nonpregnant employees.

Here, BLF merely distributed Ayers's workload to other attorneys. This fact is supported by Amey's declaration testimony, which Ayers cites, stating that Amey took over most of Ayers's cases and other attorneys took the rest of the cases. ECF No. 33-3 ¶ 7. Ayers's declaration testimony suggests that the practice of reassigning cases when attorneys left was customary at the firm. *See* Ayers's Decl. ¶ 33 (discussing "inherited cases from lawyers who quit"). Ayers fails to offer evidence that she was *replaced* by a nonpregnant individual. An employee is not *replaced* when her "former duties are distributed among other co-workers." *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294–95 (5th Cir. 2014) (quoting *Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010)); *see also Wong v. Lighthouse Point, LLC*, NO. 4:16-CV-109-DMB-JMV, 2017 WL 6028356, at *6–7 (N.D. Miss. Dec. 5, 2017) (discussing Fifth Circuit caselaw on the redistribution of duties after termination).

Ayers fails to produce evidence showing that she was treated less favorably than a similarly situated comparator outside her protected class or that she was replaced by someone outside of her class. Because Ayers has not raised a genuine

issue of material fact on the fourth element of her pregnancy-discrimination claim, she cannot meet her prima facie burden. Thus, the court need not go any further in the burden-shifting analysis. Defendants' summary judgment motion is granted on the pregnancy-discrimination claim.

### B. FMLA Interference and Retaliation

"The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child . . . ." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (citing 29 U.S.C. § 2612(a)(1)). The statute makes it illegal for employers: (1) "to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right granted under the FMLA; or (2) "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a). "The difference between the two claims is that an interference claim merely requires proof that the employer denied the employee rights under the FMLA, while a retaliation claim requires proof of retaliatory intent." *Morris v. Tex. Health & Human Servs. Comm'n*, Civil Action No. H-16-3116, 2019 WL 3752762, at *13 (S.D. Tex. Aug. 8, 2019). "The FMLA provides a private right of action for violation of its provisions." *Morris*, 2019 WL 3752762, at *13 (citing 29 U.S.C. § 2617).

In her complaint, Ayers claims that, because BLF failed to comply with its statutory duties by not "implement[ing] an FMLA policy;" not "advis[ing] Ayers of her rights under the FMLA;" and not "offer[ing] her FMLA leave when she notified BLF of an FMLA-qualifying condition[,]" the leave that Ayers took "should have been certified under the FMLA." ECF No. 1 at 5. Ayers also alleged that Bergquist "set policies for BLF; hired and fired employees including Plaintiff; controlled employees' terms and conditions of employment including payments and schedules; and supervised Plaintiff directly and indirectly." *Id.* Ayers alleges that Defendants terminated her taking FMLA leave and "did so to interfere with [her FMLA] leave and to retaliate against [her] for taking leave." *Id.*

### i. FMLA Interference

As discussed above, "the FMLA prohibits an employer from 'interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise'" rights provided under the statute. *Caldwell v. KHOU–TV*, 850 F.3d 237, 245 (5th Cir. 2017) (alterations in original) (quoting 29 U.S.C. § 2615(a)(1)). FMLA rights include the entitlement to reinstatement to the employee's former or equivalent position. 29 U.S.C. § 2614(a)(1). Interference with the exercise of FMLA rights includes the employer's: (1) refusing to authorize FMLA leave; (2) discouraging the use of FMLA leave; (3) manipulating the employee to avoid FMLA responsibilities; and (4) failing to comply with notice requirements. 20 C.F.R.

19

§§ 825.220(b), 825.300(c); *see also Butron v. Centerpoint Energy*, No. 4:10-CV-0369, 2011 WL 2162238, at *7 (S.D. Tex. May 31, 2011) (quoting 29 C.F.R. § 825.220). Any of these actions, among others, "constitute[s] interfering with, restraining, or denying the exercise of [FMLA] rights." 29 C.F.R. § 825.220(b).

Ayers alleged that Defendants interfered with her right to take leave, not that they violated any right to reinstatement. *See* ECF No. 1 at 5. In order to demonstrate that Defendants interfered with Ayers's right to take FMLA leave, she must show: "(1) [she] was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *Lindsey v. Bio-Medical Applications of La., L.L.C.*, 9 F.4th 317, 323 (2021) (quoting *Caldwell*, 850 F.3d at 245) (alterations in original). At a minimum, a plaintiff must show that the defendant "interfered with, restrained, or denied [her] exercise or attempt to exercise FMLA rights[] and that the violation prejudiced [her].'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (first alteration in original) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

The FMLA regulations set out employer notice requirements, including the posting of FMLA provisions, providing employees with written FMLA

information and notice of expectations and obligations of the employee, and providing notice to the employee when it designates leave as qualifying under the FMLA. 29 C.F.R. § 825.300. The "[f]ailure to follow the notice requirements . . . may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Additionally, the failure to provide notice of eligibility under the FMLA may constitute interference "when an employee requests FMLA leave, or 'when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason[.]'" *Calderone v. TARC*, 640 F. App'x 363, 365 (5th Cir. 2016) (quoting 20 C.F.R. § 825.300(b)(1), (e)).

Defendants do not dispute that Ayers was an eligible employee, that BLF was subject to the FMLA, or that Ayers was entitled to FMLA leave. *See* ECF No. 29 at 26–27. Defendants argue that they provided Ayers with notice of her FMLA rights at the time of benefits enrollment in May and September 2018 and September 2019. *Id.* (citing ECF Nos. 29-8, 29-9, 29-10). Defendants point to three copies of a document entitled "Important Notices," which are grouped in evidence with three benefit confirmation forms. *See id.* (citing ECF Nos. 29-8, 29-9, 29-10). The "Important Notices" document explains several federally provided rights, including FMLA. *See* ECF No. 29-8 at 3–17; ECF No. 29-9 at 3–17, ECF No. 29-10 at 3–17. Ayers signed the benefit confirmation forms, but there is no

acknowledgement of receipt of the "Important Notices" document. *See* ECF Nos. 29-8 at 1–2, ECF No. 29-9 at 1–2, ECF No. 29-10 at 1–2. In her declaration, Ayers denied ever receiving the document. Ayers's Decl. ¶ 13. Defendants also argue that Bergquist offered Ayers FMLA leave when she notified him of her pregnancy and that, when Ayers "did request leave through her doctor's note on January 29, 2021," Bergquist "placed [her] on leave." *Id.* Defendants fail to support the latter two arguments with cites to supporting evidence. [2]

In support of her interference claim, Ayers stated in her declaration that no one ever mentioned FMLA leave to her; that Bergquist did not offer FMLA leave when Ayers reported her pregnancy in the summer of 2019; and Bergquist did not state that he was putting her on FMLA leave when he denied her request to work from home. Ayers's Decl. ¶¶ 12–13. Ayers acknowledged signing copies of the employee handbook and reading and signing the associate manual (none of which discussed FMLA leave or BLF's FMLA policy). ECF No. 29-4 at 2–3; *see also* ECF Nos. 29-3, 29-5, 29-6. Ayers also affirmed that BLF did not post any information about a firm FMLA policy. ECF No. 29-4 at 2–3; Ayers's Decl. ¶ 12.

Viewing the evidence in favor of Ayers, as the court must, it gives rise to material fact disputes whether Defendants complied with its FMLA notice

---

[2] Defendants cite only to what appears to be sections of their brief. *See* ECF No. 29 at 27 (citing "Section IV(C), *supra*" and "Section IV(C)(7), *supra.* ") (emphasis in original). The court finds no corresponding sections in Defendants' brief.

obligations. Ayers has raised fact issues as to whether Defendants provided notice of her FMLA rights when she began working for BLF or in written materials it provided to employees and whether Defendants failed to determine her eligibility and notify her of eligibility after becoming aware that she was pregnant and later when she was restricted to bedrest. The evidence shows, without dispute, that Defendants were aware of Ayers's pregnancy and doctor's prescription of bedrest. *See* Ayers's Decl. ¶¶ 12, 18–19, 21.

Finally, Ayers affirmed that she "absolutely would have taken FMLA leave if [she] had known that was an option." Ayers's Decl. ¶ 17. This is evidence that she would have taken advantage of her FMLA rights if she had known they were available to her and raises a fact issue as to whether she was prejudiced by Defendants' alleged notice violations.

Defendants' summary judgment motion is denied on the FMLA interference claim.

### ii. FMLA Retaliation

The FMLA also prohibits an employer from discriminating against or terminating the employment of an employee who exercises her rights under the statute. 29 U.S.C. § 2615(a)(2). FMLA retaliation claims based on circumstantial evidence are analyzed under the burden-shifting approach. *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021). As discussed above, the burden falls

23

first on the employee to set out a prima facie case of retaliation, which requires evidence that: "(1) [the employee] was protected under the FMLA; (2) [the employee] suffered an adverse employment action; and (3) [the employee] was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made *because* [the employee] sought protection under the FMLA." *Id.* (quoting *Acker*, 853 F.3d at 790.). The third element requires evidence of a causal link between the FMLA-protected activity and the adverse action. *Acker*, 853 F.3d at 790.

Defendants again do not dispute that Ayers was protected under the FMLA. ECF No. 29 at 26. They also do not dispute that her employment was terminated. *Id.* Instead, they challenge only the third element, arguing that Bergquist encouraged Ayers on several occasions "to take as much time as needed" and assured her "that she would have the firm's full support." *Id.* (citing ECF No. 29-12). Defendants also argue that "Bergquist specifically advised [in an email to several recipients that] 'we have to plan for Tiecia to be out and try to not bother her unless necessary in the future so she can have chill time with the baby.'" *Id.* (citing ECF No. 29-46).

Because Ayers's employment was terminated *while* she was on leave after being on bedrest for the pregnancy-related medical conditions and the birth of her child, the time between the alleged FMLA-protected activity and the adverse

24

action was no more than a few days. Temporal proximity satisfies the causal link at the prima facie stage. *Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (stating, in a retaliation case under the False Claims Act that the Fifth Circuit requires "only a 'causal connection' between a protected activity and an adverse employment action, which could be established simply by showing close enough timing between the two events."). Ayers satisfies her initial burden.

The employer then must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)). Defendants have satisfied this burden by stating that Ayers was terminated for "poor job performance and failure to comply with BLF's policies and procedures." ECF No. 29 at 27; *see also* ECF No. 29-49. Poor performance is recognized as a legitimate nondiscriminatory reason for termination. *See, e.g., Adcock v. Sunquest Props., Inc.*, 421 F. App'x 446, 448–49 (5th Cir. 2011).

Ayers has the final burden to demonstrate that her employment was terminated in retaliation for taking leave. *See Feist v. La., Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013). The Fifth Circuit has held that an FMLA retaliation claim survives summary judgment upon a showing of a conflict of substantial evidence on but-for causation. *Wheat v. Florida Par. Juv. Just. Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016); *see also Hernandez*, 550 F. Supp. 3d

at 417 (requiring substantial evidence to rebut a nondiscriminatory reason for termination on a PDA claim). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 660 (5th Cir. 2012)).

Citing Diaz's deposition testimony that nothing other than Ayers's performance was contemplated in deciding to terminate her employment, Defendants argue that the decision "was made regardless of any FMLA-protected leave." ECF No. 29 at 27 (citing ECF No. 29-11 at 9). Ayers disagrees with Defendants that she was performing poorly, but disagreement alone cannot raise a fact issue on pretext. *Cf. Kraft*, 775 F. App'x at 161 (quoting *Bryant*, 413 F.3d at 478 ("Management does not have to make proper decisions, only non-discriminatory ones.")).

Ayers also argues that Defendants changed their stated reason for terminating her employment, raising an inference of discrimination. ECF No. 33 at 28. "An employer's shifting reason for termination and inconsistent explanation for the reasons behind the adverse employment action are evidence from which a factfinder could infer an explanation is not trustworthy and therefore evidence of pretext." *Olan v. Uvalde Consol. ISD*, No. SA-20-CV-00487-ESC, 2021 WL 4155253, at *7 (W.D. Tex. Sept. 13, 2021); *see also Burton v. Freescale*

26

*Semiconductor, Inc.*, 798 F.3d 222, 238 (5th Cir. 2015) (quoting *Patrick v. Ridge*, 394 F.3d 311, 318–19 (5th Cir. 2004) ("We have already observed that, as a matter of law, a purported reason for a decision that postdates the actual decision is necessarily illegitimate.").

Defendants' reason(s) for terminating Ayers's employment increased during the period between termination and lawsuit. The termination email dated February 6, 2020, stated that Ayers's employment was being terminated because she did not submit "a proper request for time off or a plan of action for [her] phone calls, faxes, emails regarding [her] cases and any of [her] other job duties." ECF No. 29-49. In a letter to the TWC dated March 16, 2020, Defendants repeated the above-stated reason for terminating Ayers's employment and added that Ayers failed to average fifty-five work hours per week; failed to maintain accurate timesheets; failed to respond to client phone calls and emails; and failed to follow BLF's audit procedure. ECF No. 33-13 at 195.

In response to the EEOC charge dated September 18, 2020, Defendants stated that Ayers's employment was terminated because, among many other listed failures, she "failed to maintain her required hours and timesheets[;]" "failed to properly manage her supervisee[;]" "failed to follow proper audit procedure[;]" "failed to properly respond and attend to clients, calls, emails, and deadlines concerning her caseload[;]" "failed to provide written notice and follow BLF

company policy as to what would be done when she was out of the office[;]" ECF No. 33-10 at 2, 6–7, 12. In their summary judgment motion, Defendants argue that they "have articulated multiple, legitimate, non-discriminatory reasons for their actions" and that "the decision makers[] decided to terminate Ayers solely based on her poor job performance and failure to comply with BLF's policies and procedures." ECF No. 29 at 24–25.

Ayers has presented sufficient evidence of Defendants' compounding reasons for Ayers's termination well after the fact to raise a dispute of material fact on pretext. *See Olan*, 2021 WL 4155253, at *7. While the court finds that the changes in Defendants' reasons for terminating Ayers's employment is enough to find a fact issue on pretext, the court recognizes that other evidence also may be relevant. For example, a jury's finding that Defendants did fail to provide all required FMLA notice to Ayers may allow a jury to draw an inference that Defendants terminated Ayers because she took FMLA-qualifying leave. Moreover, for all the instances of poor performance that Defendants identify, the evidence shows that Ayers had not been informally counseled or formally disciplined until she notified Defendants of her need for FMLA-qualifying leave. *See* Ayers's Decl. ¶ 6 (stating that she had not received any type of performance counseling or warning prior to January 2020).

Defendants argue that the FMLA "does not shield employees from termination just because they took leave, if the reason is unrelated to the employee's exercise of rights under the FMLA." ECF No. 29 at 27. Defendants argue they would have terminated Ayers's employment regardless of her taking leave. For the reasons discussed above, this is a question for the jury.

Defendants' summary judgment motion is denied on the FMLA retaliation claim.

### C. ADA Discrimination and Accommodation

The ADA and the TCHRA prohibit discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also* Tex. Labor Code § 21.051; *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). This prohibition covers, among other acts, treating an employee in a way that "adversely affects [an employee's] opportunities or status" because of her disability and failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §§ 12112(b)(1), 12112(b)(5)(A).

### i. Discrimination

ADA disability-discrimination claims based on circumstantial evidence are also analyzed under the burden-shifting approach. *Moore v. Burlington N. Santa Fe Ry. Co.*, No. 21-20103, 2022 WL 16860550, at *4 (5th Cir. Nov. 11, 2022) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). As discussed above, the burden falls first on Ayers to set out a prima facie case of disability discrimination, which requires evidence that she (1) had a disability; (2) was qualified for the job; and (3) was subject to an adverse employment action because of her disability. *Id.* (quoting *LHC Grp., Inc.*, 773 F.3d at 697). BLF argues that Ayers cannot meet her prima facie burden on any of the three prima facie elements.

Addressing the third element first, the court notes that BLF does not dispute that it terminated Ayers's employment but argues that she must also show that she was replaced by a nondisabled person or treated less favorably than a nondisabled employee. ECF No. 29 at 23. However, the Fifth Circuit in *LHC Grp., Inc.*, 773 F.3d at 695, rejected that requirement as an element of a prima facie case for disability discrimination. Thus, termination alone satisfies the final element of Ayers's prima facie case.

The first element of a prima facie ADA case requires that Ayers demonstrate that she had a disability. "A person is disabled under the ADA if [she] (1) has a

physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." *Appel*, 428 F. App'x at 284 (citing 42 U.S.C. § 12102(2)). "Courts have consistently held that pregnancy is not 'by itself . . . an impairment under the ADA.'" *Flores v. Pilot Travel Ctrs., LLC*, Civil Action No. H-21-2317, 2021 WL 4925386, at *3 (S.D. Tex. Oct. 21, 2021) (citing cases). However, pregnancy-related complications may rise to the level of an impairment under the ADA. *Id.* at *4 (citing cases) (finding that the plaintiff satisfied her burden at the pleading stage by alleging that she suffered vaginal bleeding as a result of her high-risk pregnancy); *see also Hernandez*, 550 F. Supp. 3d at 419 (finding on summary judgment that the plaintiff's pregnancy-related condition, hyperemesis gravidarum, qualified as a disability).

Here, Ayers described her symptoms as premature contractions and nausea. ECF No. 29-4 at 5–6. Ayers's doctor prescribed bedrest and ordered tests to determine whether her pregnancy was high risk. Ayers's Decl. ¶ 18. Although Ayers returned to work after two days off, Ayers experienced serious pregnancy-related symptoms a couple of weeks later and went to the hospital. *Id.* ¶¶ 19–20. Her doctor then prescribed bedrest for the remainder of her pregnancy. *Id.* ¶ 20; *see also* ECF No. 29-15 (stating that Ayers was experiencing difficulty with her pregnancy but was able to work from home). Viewing the evidence most favorably

to Ayers, as is required, the court finds she has produced some evidence that she suffered a physical impairment, which a jury could find substantially limited Ayers in major life activities such as sleeping, lifting, and concentrating. *Cf.* 42 U.S.C. § 12102 (listing life activities considered major under the ADA). Ayers thus meets her summary judgment burden on the first element.

A plaintiff must not only be disabled but must also be a "qualified individual," which means an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8); *see also Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021).

Ayers must show that, when her employment was terminated, she could either: (1) perform the essential functions of her position despite her disability; or (2) that, with a reasonable accommodation, she would have been able to perform the essential functions of her position. *Cannon*, 813 F.3d at 592; *see also Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 519 (5th Cir. 2021). The definition of "essential functions" is "the fundamental job duties of the employment position the individual with a disability holds or desires." *Weber*, 989 F.3d at 323–24 (quoting 29 C.F.R. § 1630.2(n)(1)). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *LHC Grp., Inc.*, 773 F.3d at 697 (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993)). Several

32

factors inform the court's determination whether a function is essential, including the "employer's judgment as to which functions are essential;" the employer's written job description; "the amount of time spent on the job performing the function;" and "the consequences of not requiring the [individual] to perform the function." 29 C.F.R. § 1630.2(n)(3); *see also Weber*, 989 F.3d at 325 (quoting 29 C.F.R. §1630.2(n)(3)). The court "must give greatest weight to the 'employer's judgment.'" *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017).

Ayers argues, "There is no dispute that during Ayers's period of disability, she was *generally* qualified to be an attorney, and was performing tasks of supervising attorneys at [BLF]." ECF No. 33 at 24. Ayers cites no evidence in support of this assertion. More importantly, being *generally* qualified to be an attorney is not the standard used to determine whether a person is qualified under the ADA. As defined above, the employee must be able to perform *all the essential functions* of her job with or without accommodation. *Cannon*, 813 F.3d at 592. In other words, Ayers must produce evidence that she could perform the functions of her job not that she was qualified because she possessed a law degree and license.

BLF argues that Ayers failed to perform all the essential functions of her job during either period of bedrest. ECF No. 29 at 30. BLF points to an email that Ayers sent during her initial two-day bedrest, in which she stated that "the medications [made her] drowsy and unable to stay up throughout the full day."

33

ECF No. 29-21; *cf. Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 583–84 (5th Cir. 2020), *cert. denied.* (noting that the Fifth Circuit has "held [that] maintaining consciousness is a basic element of any job"). In that email, Ayers also delegated aspects of her attorney functions to other BLF employees. *See id.* Ayers explains that the email does not mean that she was unable to perform her job at that time but only indicates that she was planning to get some work done even though she was taking two days of PTO. ECF No. 33 at 24. Other than the explanation of the email's meaning, Ayers fails to produce any evidence demonstrating that she was able to perform all the essential functions of her job while on bedrest.

BLF also argues that Ayers did not complete the tasks that Bergquist assigned her on December 31, 2019, in preparation for being on bedrest. ECF No. 29 at 30. Because the employer's judgment should receive the greatest weight, the specific tasks Bergquist assigned Ayers before her first period of bedrest may be considered essential functions of her employment. *See* ECF No. 29-16 (including emails exchanged between Ayers and Bergquist in which Bergquist identified tasks that Ayers needed to complete); ECF No. 29-17 (same); ECF No. 33-17 (same); 29 C.F.R. § 1630.2(n)(3)(i) (stating that the employer's judgment informs the determination of what are essential functions). Ayers admits that she did not complete those assignments. Ayers's Decl. ¶ 21. Completing assigned tasks is an essential function of any job. *Cf. Wolf v. Lowe's Cos.*, CIVIL

ACTION NO. 4:16-CV-01560, 2018 WL 1322243, at *2 (S.D. Tex. Mar. 13, 2018) (quoting *In re Hypes v. 1st Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (stating that attendance was critical to performance of essential functions)) ("An essential element of any job is the ability to appear for work and to complete assigned tasks within a reasonable period of time.").

In her declaration, Ayers stated that, in preparation for being on bedrest a second time in late January, she made arrangements to access calls, emails, and faxes while at home, she worked on January 28, 2020, to make sure her cases were current, and, throughout bedrest and beyond, she answered calls from Amey and Garcia. *See* Ayers's Decl. ¶¶ 21–23. That testimony does not support a finding that she was able to complete *all essential job functions* during that time. Moreover, after January 28, 2020, Ayers stopped checking her email entirely. *See id.* ¶ 23. Producing evidence that Ayers was able to perform some but not all her essential functions is not sufficient to demonstrate that she was a qualified individual under the ADA. *See Appel*, 428 F. App'x 284 (finding a pregnant plaintiff was unqualified under the ADA because, even though she could perform some aspects of her position, she could not perform many of the job's physical requirements).

Because Ayers has not raised a genuine issue of material fact on the second element of her ADA discrimination claim, she cannot meet her prima facie burden. Thus, the court need not go any further in the burden-shifting analysis.

Defendants' summary judgment motion is granted on the ADA disability-discrimination claim.

### ii. Accommodation

An employer must accommodate "the known limitations of an employee's disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). Unlike an employee seeking FMLA leave because she is *unable* to perform her job, an employee "requesting a reasonable accommodation communicates that [s]he *can* perform the essential function of the job." *Acker*, 853 F.3d at 791–92.

A failure-to-accommodate claim requires proof that (1) the plaintiff "is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Id.* As discussed above, Ayers fails to produce evidence that she was "a qualified individual with a disability" under the ADA. *Cf. In re Hypes*, 134 F.3d at 726–27 (quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995)) ("An employer is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced.").

Because Ayers has not raised a genuine issue of material fact on the first element of her ADA accommodation claim, she cannot meet her prima facie burden. Thus, the court need not go any further in the burden-shifting analysis.

36

Defendants' summary judgment motion is granted on the ADA accommodation claim.

## 5. Conclusion

The summary judgment record raises genuine issues of material fact as to Ayers's claims under the FMLA. Accordingly, Defendants' motion for summary judgment is DENIED as to those claims. Because the court finds that Ayers did not carry her burden to produce evidence in support of every element of her PDA claim or ADA claims, Defendants' summary judgment is GRANTED as to those claims.

Signed at Houston, Texas on December 21, 2022.

Peter Bray
United States Magistrate Judge